We want to welcome everyone to the September Court Session of the Fourth Circuit in Richmond. We have three interesting cases. It seems like it's South Carolina Day, Ted Shedd. As good as it can get. We're going to lead off, though, with the First South Bank v. Bank of the Ozarks. Mr. Lindley, we're pleased to hear from you, sir. May it please the Court, my name is Trey Lindley, a lawyer with Johnston, Allison & Hoard in Charlotte, North Carolina, and I'm here today on behalf of the Defendant Appellant, Bank of the Ozarks. I'm joined today by one of my partners, Connie Young, who represented the bank at the trial of this matter on the district court level. For our purposes today, I'd like my argument to focus on three issues, the first being a brief recitation of the pertinent facts and relationship between the parties, the second, an explanation why the operative document, the underlying contract that's in dispute, which I'll refer to as the participation agreement, why that document is not ambiguous, and then finally, a walkthrough of several of the provisions of the participation agreement to illustrate that fact in a manner that wasn't previously articulated in the briefs. Now, if you're right on the ambiguity issue, all the trial was a waste of effort, right? That's absolutely true, Your Honor. And if you're wrong on the ambiguity issue, you lose? That's absolutely right as well. Bank of the Ozarks is a successor in interest to Woodlands Bank, the original bank to the participation agreement. Participation agreement essentially is a document that governs the relationship between the two banks who participated in a loan to a third-party borrower named Lakeside Development. Woodlands Bank was taken over in receivership by the FDIC, and so Bank of the Ozarks essentially inherited and assumed the underlying loan as well as the participation agreement. For that reason, it didn't participate in any of the contract negotiations, had no role in them, had no subjective intent when they were entered, and Bank of the Ozarks is here today asking this court to enforce the plain and unambiguous – Does your argument rise or fall on what the term payment terms means? No, Your Honor. Asking this court to enforce the plain and precise language of the participation agreement as written. If we're unsure what the term payment term means, if that's not clear from the contract, then don't you lose? I don't think so, Your Honor. It's an undefined term. I know that, but if it's undefined, that's leading toward ambiguity. I'm saying if that term is ambiguous, what it means in that provision, don't you lose? I can't fathom how that term is ambiguous. I didn't ask you that. I suppose if the contract's ambiguous, no matter what term it is, I'll lose. I'm not asking that. I'm asking a very specific question. Okay, I'm sorry. My question is, if the term payment terms is ambiguous, then don't you lose? I thought your whole case turned on that term. My whole case turns on the first clause in that paragraph, which is notwithstanding any payment terms. I know that, but the key word there is the payment terms, isn't it? Well, I don't think so. I think the key word is notwithstanding. No, it can't be that. Notwithstanding just means notwithstanding something that follows, then this is the case. So it's what follows that's most important in it, payment terms. For instance, if this contract said, notwithstanding any other provision to the contrary, wouldn't you have a very strong case? I don't see a distinction that makes a difference in that, Your Honor, respectfully. I believe that because it says notwithstanding any and all payment terms, it doesn't really matter what those terms mean because it's still bestowing preeminence upon paragraph  No, no. I think you're missing the point. I think you're missing the point. The word notwithstanding doesn't control. It's what follows notwithstanding in that clause, I think. So it's notwithstanding something. What if it said notwithstanding any verbal agreement to the contrary? You wouldn't win on that case, would you? It's what follows notwithstanding that controls, isn't it? I don't believe so, Your Honor. Okay. You just think that since it says notwithstanding, no matter what words follow that, you win because why? Well, because I interpret that word to mean to the exclusion of any other provisions that may conflict with it. I know that. No, but isn't that only covered by payment terms? Notwithstanding payment terms to the contrary. Isn't it notwithstanding modified or cabined by payment terms? And so you have to know what payment term means to know what we don't pay attention to? I'm just asking that question. Yeah, I believe that it's implicit in the phrase payment terms. It's referring to other terms of payments that are contained within the participation agreement. That's what I mean. So it matters. I'm just asking. It seems to me your argument is payment terms clearly means something. Yes, Your Honor. And you say it clearly means, but it depends on what payment terms mean, doesn't it? You don't think that? I'm not going to believe it. I'm just going to get your answer and I'll let you go on, but it seems to me your argument revolves around what does payment terms mean? Does it clearly mean everything else including the other provisions specifically aimed at expense? Expenses. Absolutely. I believe it applies to all the provisions in which any payment terms are contained. And in our briefs, I identified, I think, a number of paragraphs, potentially even eight, that have different payment terms. So I respectfully submit that to the exclusion of all those terms, in the end of the default, this is the way things are treated. We know that payment terms, I believe it makes sense that payment terms will refer to other terms within that document. And if we're saying, notwithstanding what those terms are, in the event of default, this is how payments are going to be treated. And I don't see an ambiguity in that phrase. And more importantly, because that entire phrase, notwithstanding any payment terms to the contrary, contemplates a preeminence upon what follows next, I don't think it matters what those terms are. I'm going to ask you one question to be sure I understand your position. It's your position, then, that the way the contract is written, notwithstanding any payment terms to the contrary, is the same as notwithstanding any other contract term to the contrary. You think those are exactly the same? Well, the only thing... But do you think they're the same, or don't you think they're the same? I think they're the same. Okay. When read in the context of the entire paragraph 19, they're the same, because all paragraph 19 speaks to is the application of payments. And so with that in mind, there's not going to be a conflict with any other terms of the contract, because it doesn't refer to, reference, or affect any other terms of the contract, just the payment terms. And for that reason, I believe it's the same. Thank you. Is your point properly preserved in the district court? I believe so, Your Honor, for several reasons. First and foremost, Rule 50 applies by its terms to jury trials. And this was a bench trial? Yes, Your Honor. So Rule 50 doesn't have anything to do with it? Doesn't have anything to do with it. In your view? In my view, Your Honor. Well, Rule 50 itself references the context of jury trials. It doesn't reference trials in general, and so for that reason, I believe it does. I also believe that Rule 50 is designed to test the sufficiency of evidence. And this isn't so much of an evidentiary issue as it is a pure legal issue. It's a straight up and down legal point. Yes, Your Honor. That's what your position is. Yes, Your Honor. Did you raise that post-trial? It was not raised post-trial. Well, why? I thought you filed, I don't really get into trying to help out one side or the other. Probably shouldn't. But you filed proposed findings of fact and conclusions of law, correct? No, Your Honor. Well, we have them here. You sent them directly to the judge. I have to beg ignorance on that, Your Honor. I didn't try this case and I'm not familiar with whether those were submitted. Whether or not you tried it, you should be familiar with the record.  Uh-huh. The judge directed the parties to forward proposed findings of fact and conclusions of law directly to him. And you forwarded one that said that the judge should conclude as a matter of law that the contract was not ambiguous. Yes, Your Honor. On August the 9th. Okay. Whatever year we're talking about here. Okay. Go ahead. As I believe that the trial transcript adequately reflects, the trial judge wasn't interested in entertaining. During the trial, he did actually, he kept saying, don't talk about that. I've dealt with that. I've said it's ambiguous. That's the reason we're having the trial. Don't bother me with that. Yes, Your Honor. But you submitted, filed, whatever the proper term is, you submitted them and you, I believe you emailed them directly to the judge at his direction. Maybe you, maybe the other side could say that's not part of the record because you didn't send them to the clerk. But, uh, Maybe the other side sent them and put your name on them. Maybe they did. I don't know. Maybe they're a fugitive document. Maybe somebody just kind of wanted to help you out from, the phantom came in here or something. In any event, Is your argument that you didn't do anything factually, procedurally under the rule, but you aren't required to do so? That's correct. You just went under the operation of the rule? Yes, Your Honor. Without any, whether you did or did not, you think you went under reading the rules properly, whether you did or did not file anything that could be seen as an objection after the trial was over? That's your position? Yes, Your Honor. My review of the relevant case law from across all 13 circuits is... I'm not asking you to argue it, I'm just saying that is your position. That is my position, Your Honor. Correct. And you argue all that in your supplemental brief? Yes, Your Honor. But, returning to Judge King's comment from a moment ago, As a practical matter, I don't believe anything should have been done in order to preserve that issue for appeal because I don't think any purpose would have been served by that as the trial transcript reflects and I'm not aware of any case law that requires anything to be done at a bench trial to preserve a motion for judgment. But that's what you just answered my question. Thank you, Your Honor. But if it is ambiguous, you lose. You agree to that? If the participation agreement contains ambiguous terms as to how payments are to be treated after default, yes, we lose. Your case rises or falls on ambiguity or no ambiguity? I believe the entire case rises and falls on that seven-word phrase, notwithstanding any payment returns to the contrary. If you were to look at the document from 30,000 feet, I think it also makes sense from a common-sense yet unscientific perspective. In other words, it makes sense to me that the bank that has the primary relationship with the borrower that's originating the loan, that's administering the loan, that's invited another bank to join in and participate in funding the loan, would be shouldered with the burdens of the cost of doing business. But you don't deny this the way this document reads, but you don't deny that if parties wanted a contract for a document to read the way the other side says it to read, they could do that? Yes, Your Honor. Whether it made sense or not, they could do it? Correct. You just don't think this document does it? That's absolutely true. And I think it makes good sense reason why it doesn't. Since it's outside both banks' fault or control, when the third party borrower defaults, it makes sense to me that they share those expenses equally. And as the hypotheticals in our principle brief point out, to hold otherwise would lead to inequitable outcomes and potentially even absurd results because one bank is basically going to be made much more whole than the other bank. And what paragraphs do you think we should focus on to get to your point? To get to my point, I think first paragraph four, which defines expenses, and as I submit, expenses are not only those incurred after default. It neatly conforms to paragraph seven that enumerates four different documents that are typically drafted by lawyers, which would be attorney's fees, and either recorded with the Register of Deeds or filed with the Secretary of State. So those would be court costs and disbursements. So we know from the face of the document itself, expenses in that term doesn't relate only to those incurred upon a default. When we read those provisions against the backdrop of paragraph 19, the fact that expenses, that first clause, first to expenses, is invoked by the drafters, a word that is defined in paragraph four, I think it's hard to fathom why they would use that nomenclature if they didn't intend for it to apply in such a way to change the way paragraph four operated upon a default. But not paragraph three at all? Yes, and then the next phrase is second to the parties in proportion to their respective investments in the loan. So paragraph 3B is a first out provision. And that's the fourth one that I think is most important, because it specifies that upon default, the first out provision no longer applies. First South Bank concedes that point. In paragraph 19 of its amended complaint, which is found on Joint Appendix page 11, they don't take issue with the application of payments after default being divided pro rata. They only take issue with the application of those payments first to expenses. So at the end of the day, First South Bank's position is that the three-word phrase, first to expenses, should be stricken through and annulled, but they don't dispute the remainder of paragraph 19, or really the remainder of the participation agreement in general. And I think that's the best evidence of why paragraph 19 should be given force and effect. The law provides that contracts should be read as a whole, and when possible, effect should be given to every word and phrase contained in it. Only Bank of the Ozarks advocates a position that gives a force and effect to every word in the document. We're not asking this Court to ignore any provisions. First South Bank, in order to prevail, I would submit to you, has to ignore that key phrase. Let me tell you exactly what I'm talking about. A document called Bank of the Ozarks Proposed Findings of Fact and Conclusions of Law, dated the 9th of August, 2012, signed by J. Ronald Jones, Jr., and Constance L. Young as counsel. Page, it's 19 pages, on page 11, at conclusion, proposed conclusion of law number 3, the Lakeside Credit Participation Agreement is unambiguous and its paragraph 19 controls treatment of expenses after default. That's what you, that's what the Bank of the Ozarks, it says in the leading paragraph, tenders, and it sent them directly to Judge Gergel. And that's our position still today, Your Honor. Well, okay. I believe my time is up. You saved some time. You have some time reserved. Yes, unless there are other questions, I'd like to reserve that.  Thank you, Your Honor. Ms. Poehler? You're the one that brought the exhibits. Well, he brought exhibits. Oh, he brought exhibits and never did use them. So you brought your own. We got lawyers that bring them along every now and then, and I think we usually let them use them, but I think that probably most of the time, the judges aren't too impressed with these exhibits and oral arguments. But you can use anything you want. They are just part of that agreement. If it's supported by the record. Thank you, Your Honor. May it please the Court, I'm Alice Poehler, and I'm here from Rosenhaygood in Charleston, South Carolina, and I'm representing First South Bank. I wanted to use those exhibits. Isn't that an admission that the way you put the joint appendix together, the documents just are very difficult to read? Yes, sir. That's all it is. It's just that when you all put it together, for whatever reason, the documents you would have us look at to decide this case are barely decipherable because of the print. And that's why, actually, I had these made for trial just so that I could use them with the witnesses. But I don't care about the trial. I'm asking about here. That's just an acknowledgment. You just want to be able to show us, to be sure we see the actual words correctly. That's correct. Thank you, Judge Shea. That is correct. I'm here to discuss three issues. The first is whether or not the issue of ambiguity was preserved for the appeal. The second is, is the contract ambiguous, as the district court found. And the third is, if it's not ambiguous, is the interpretation of Bank of the Ozarks or the interpretation of First South Bank the clear and unambiguous interpretation? As far as the preservation, I believe that the short answer is no, it was not preserved. How did you preserve it on appeal? You didn't raise it. I did not raise it, no, sir. And I didn't, you're right. And I was asked to do a supplemental brief and look at Varghese. It's a two-edged sword, isn't it? Yes, sir, it is. But after I looked at that case, which did talk about Rule 50, which I really don't think is the controlling rule in this case, what I see as going on in this case, because it was a non-jury trial, is that just like a motion for summary judgment, a motion for judgment on the pleadings is an interlocutory order. And when it's denied, the district judge can change his mind, just as you showed Mr. Lindley in their proposed findings of fact and conclusions of law, they asked the court to find that the agreement was not ambiguous. That was their proposal on August the 9th. I think it was either during the trial or just before the trial. I don't remember the exact dates, but August the 9th, they submitted to the court proposed conclusions of law, which included one on ambiguity. Yes, sir. And I thought that kind of took care of it, unless you could say it wasn't really properly in the record for some reason, because they didn't, nobody ever took it down to the clerk's office, or sent it to the clerk's office. Well, I think it was in the record, and I think the judge addressed it in his final order, that he... And he disagreed with it. Correct. He went, he had a whole paragraph on... He said it is ambiguous, that's why we're having a trial. Correct. So they said it's not ambiguous, they said not ambiguous in the motion for judgment on the pleadings, which raised that legal issue, and he overruled it, and they said on August the 9th again... And it came up at the trial. ...not ambiguous, and that was overruled. So what else could they do to preserve it? And you must have thought that, I mean, you all are good lawyers, you must have thought that, because you didn't raise it on appeal. Yes, sir. Well... So normally, if you don't raise it on appeal, it's abandoned or waived or something. Well, what... And we can, in certain things, like jurisdiction, if it's jurisdictional, we could raise it for you, or we could all raise it right now, if it's jurisdictional. Do you think it's jurisdictional? Well, I guess whether or not it was preserved for appeal could be jurisdictional, whether or not it should be here, and I guess my thought on it was, when they filed their notice of appeal, they were filing from the district court's final order, which they stand from that. That's what they have to file from. Well, they... I mean, under 1291, you appeal from the final decision in the case, that one that finishes the case off. They couldn't file... They abandoned that. If they filed a notice of appeal back there when he denied that judgment of acquittal, we wouldn't have had any jurisdiction. We would have done that right out of it. No, sir. But what they did after they filed it was they abandoned their appeal of the judge's final order and only appealed from the order on the motion on the pleadings. That wasn't an appealable order. They had to be appealing the final order. Or you're right, there's no jurisdiction here. They have to appeal the final order. That's the only one you can appeal under 1291. Well, they abandoned that. In their brief, there's a footnote where they say they abandoned it and they notified me of that abandonment. So my thought is that when they abandoned that, after I went back and looked at it on the invitation for the supplemental brief, I don't believe that the court has jurisdiction over the appeal because they abandoned their appeal of the final order. So you think it is jurisdictional and it's not properly here? Yes, sir. So we just throw it right out? We don't even need an opinion. We can just interrupt a dismissal order. That's in your discretion, Your Honor. I mean, in your view. In my view, I think that's exactly what happened. I think when they abandoned that final order, I think when they filed their notice of appeal, it was correct. And then they abandoned their appeal from the final order and I think it's in footnote 3 in the brief, Your Honor. I could be wrong about that. But I know that it's in there. And that's what they said. So my reading is it's not really under Varghese except that the appeal should have been from the final order because the court had the discretion up until he issued his final order to change his mind. And he didn't. Moving on, Your Honor, to my next issue, in case you don't throw it out on the jurisdictional question. That question is, was it ambiguous? And what ambiguous means, is it capable of more than one reasonable interpretation? And I went to the heart of what Judge Shedd was saying when I was looking at it because I think the main question is, what does the term payment terms mean? And I will say that there is a... All it is is a hallucination of the agreement paragraph 3 where it talks about payments. And it unambiguously provides that prior to default, all payments received must first be paid to my client, First South Bank, until First South Bank has been paid in full. It's the purchaser first out. Now, it says before default, so it's pretty clear that that's what happens before default and something changes after default. Now, this paragraph doesn't discuss it, but it is discussed in paragraph 19. Paragraph 4 is the paragraph that talks about... And what it says is that the participating bank, First South Bank, will not share in the expenses of the seller. It talks about the expenses are to collect, enforce, or protect the loan and any property securing the loan. There's no provision about before or after default. So that's very clear that seller will bear all expenses. Paragraph 6, I don't have up here, talks about administrative fees and it says unambiguously that First South Bank, my client, will not be responsible for paying the seller bank to service the loan for their administrative fees. And there is no mention of before or after default in paragraph 6. Paragraph 11 talks about... There's also no mention of default anywhere in paragraph 4. So how... Because expenses are the same before or after default, is my interpretation, but I think we're getting to the ambiguity here and why Judge Gergel found that it was ambiguous. We get to paragraph 19. It says, notwithstanding any payment terms to the contrary. First, the reader of the contract needs to determine what are the payment terms. Now, paragraph 9 defines payment. Now, it is payment with an S on the end. But I will also tell you that capitalized there, and the payment is not capitalized in paragraph 19, but there's no provision that I can find in the participation agreement that says that capitalized terms are defined that way. So payments are actually defined in the agreement as being money received by the seller towards the loan. So is that a payment term? That would be First South Bank's interpretation if the agreement is not ambiguous. The other provision in paragraph 19, which I believe makes it ambiguous, is where it says, all payments collected and received by seller will be applied ratably as follows. What does ratably mean? That's not a defined term. And in looking it up, it means capable of being apportioned, proportional. Well, when you go to paragraph 3, which defines, I'm sorry, paragraph 4, which defines expenses, what is the portion of expenses that my client, First South Bank, has to carry? Zero. Well, everybody knows what the word ratably means, doesn't it? You don't think that's ambiguous, do you? Do you think that term is ambiguous, or do you think it may be... Okay. Well, it goes right through it. It says, as follows, and then it's got a first, second, third. All in the same sentence. As follows. This is thanks to the unpaid principal amount of loan in proportion to the respective unpaid investment of the seller and purchaser's loan at the time of default. That language is not with expenses. So, what is the proportion that the purchaser is to pay? It doesn't define their ratable portion like it does for payments. So, the only place that defines the proportion is back in paragraph 4. No shared expenses. But that's where the court found the ambiguity. If you look at page 65 of his order, he says the only place that talks about expenses says that First South Bank will pay no expenses, and then you have paragraph 19. So, the ambiguity that he found was with those two provisions of the contract. And with regard to the payment terms. The... And that is the definition of ambiguity. Can there be two reasonable interpretations? And what he found was that both parties had what he considered to be a reasonable interpretation. And he couldn't figure it out. As he said at the trial in the transcript, he... If you read payment terms, the term payment terms, to mean everywhere else in the contract that it ever discusses somebody paying something. It's basically the way the other side reads it. Is there any way to read the rest of the language in paragraph 19 to consistent with the expenses paragraph? You understand my question? I mean, if we were to look at payment terms to mean anywhere else payment of any kind is talked about, expenses or otherwise, any kind of money exchanging hands, do you lose or can you read expenses in... Can you read a reasonable way paragraph 19 so that expenses there are paid but it still doesn't trump paragraph 4? Yes, sir. How would you do that? Okay. Because if I just said paragraph 19 says regular expenses are to be paid, this is the proportion that first-out taxes are to be paid. And I included B on here. There was a section that could have been checked that said, and it would have had... I'm not asking about what was or wasn't checked. I mean, what wasn't checked. I'm saying with what was checked, can you propose to me a reading that makes sense under their meaning of payment terms which they say has to mean any other provision of the contract because it does have to, I think. It doesn't say that, but that's how they read it. But if we were to read it that way, do you still... Is there necessarily a conflict between the word expenses in 19 and paragraph 4? Is there? Well, I think it's the ambiguity. I'm not asking about an ambiguity. I'm asking, is there any way that paragraph 4 could be read consistently with the word expenses used in paragraph 19 under their reading? Well, I do, Your Honor, and I think that goes to the use of the word rateable. Because their portion of the expenses to my client was zero. You just say it's zero. Yes, sir. It's not. It doesn't change. Whereas we here talked about what the proportion is going to be. They don't define that there. So you have to look elsewhere in the contract to find the proportion. How do you read payment terms in that provision 19? How do you propose it is to be read? I think it's the payments that are being made by the debtor to the banks on the loan. And those are the payments all throughout. That's the definition of payments. Is any money received on behalf of the borrower towards the loan. And you can even look at paragraph 11, which I did not blow up and it's very little, and it's setoffs. And it says, in the event of a default by borrower and a setoff of funds by seller, sellers, successors, or assigns, purchaser will share in all subsequent payments and collections from such setoff in proportion to the percentage of participation at the time of the occurrence at the default. There's no mention of payment of expenses in that paragraph. And I think that again talks about payments. And it's all about payments received from the borrower. And I believe that that is what that term talks about. Because if they meant notwithstanding, But they also say, in the event of default, and there is a paragraph that talks about payments in the event of default. And it's paragraph 3. Not paragraph 4. So aren't those the two paragraphs we should focus on when we're trying to read the contract as a whole and make sense of it? Yes, ma'am. And my client clearly understands that after default, it no longer was going to be first out. It was going to share proportionally in the payments that were received. So that is not at issue here. And it clearly says that in this paragraph, whereas in the expenses paragraph, it does not say anything about before or after default. So, your honors, we are asking to have You say that because as to that specific provision, you say because the use of the before default language there indicates that the parties saw a distinction on those payments, loan balance payments, before and after default. But since that before default or after default or any kind of default language was not used in 4, then that's an absolute no expenses ever by your client. Yes, sir. And what I think is really telling is the fact that in this paragraph, it does not tell you what happens after default with regard to payments. You go to paragraph 19, which then tells what happens with payments after default. What I would ask is that the district court's order be affirmed and that First South Bank be awarded its attorney's fees and costs for appearing in this appeal. Thank you very much. Thank you. Mr. Lindley? Thank you, your honor. As an initial matter, footnote 3 in the brief speaks to not appealing particular findings of fact, inclusions of law made at the trial. We did not intend to dismiss our appeal of this matter. Had we intended to do that, we would have filed a dismissal of our appeal. So, regardless of whether there was an inartfully drafted footnote, I don't think it is. But in any event, Is that footnote ambiguous? It may be, your honor. But you didn't amend your notice of appeal or try to change it? We appealed first from the denial of the motion for judgment on the pleadings and then after the final order was entered, we appealed from that as well. And neither of those appeals have been dismissed. As opposing counsel pointed out, though, with the interplay between paragraph 3 and 19, that you have to find out what happens after default by referring back to paragraph 19, I would submit to you, you have to do the same thing for the treatment of expenses after default. The fact that it's silent in paragraph 4, I think is unimportant. And the reason I think it's unimportant is because that defined term, expenses with a capital E, is in paragraph 19. And I don't I can't reconcile why the drafters would use that term defined in paragraph 4 again in paragraph 19 if they didn't anticipate and expect it to modify the operation of payments and the application of payments after default. There's also something very important that First South Bank pointed out a moment ago, and that is upon the occurrence of default, they can see that there is a material difference in the way payments are to be applied and treated. The only thing they take issue with is whether expenses are to be applied first. Well, the only way you can really apportion or proportionately pay back payments after a default would be to remove the expenses first. Because only then are the banks getting proportionate returns on what their investments are. So it doesn't make sense that they're going to get proportionally back whatever is recovered if they're not going to share in the expenses. They get a windfall, as the hypotheticals point out. So the only way that that second clause is actually accomplished is if expenses are applied first. Oh no, that's not true. You don't think the agreement says that, but you could have an agreement between two parties and the agreement says we pay all the expenses and then the principal is treated pro-rat after that. You could do that. By the way, lawyers kind of do that on contingent fees, don't they? They take expenses first and then take I mean, they take a balance of the total award first and then take expenses off the other side. You could arrange that any way you wanted to, couldn't you? You could certainly have an agreement that expenses are taken out first and then the balance after expenses is split, right? Correct, Your Honor. But then you could also say one party, you say the document doesn't say that, but clearly you could say one party bears all the expenses. You could say that. You could say that, Your Honor. So it could make sense. You just say that's not the way this document reads. That's correct. And it would have been a very easy solution to fix. Paragraph 4 could say seller bears all expenses before and after default. Paragraph 19 could have been changed to read, unless there's a no shared expenses in paragraph 4 selected, payment upon defaults would be applied as follows. These are easy fixes that could have been input in the document to alleviate any problem if that's what the party's intended to do. It could have been an easy fix, too, with the document said, notwithstanding any other provision to the contrary. That would make it crystal clear, wouldn't it? Well, I don't see... So you think payment terms equals other provisions. That's your argument. Yes, Your Honor, because the only thing paragraph 19 affects and modifies are other payment terms. It doesn't have any bearing or effect under any other provisions of the participation agreement. So for all intents and purposes... Participation becomes what is payment term? Is there some limitation? The other side puts up an argument that payment term refers to the payments provision of the contract. Well, the word any is in there. So... Right. It's not just... No, it wouldn't be. Last time you were up, you were focusing on notwithstanding. Now you're focusing on any. But it may be any as to any payments under payment, under payments provision. I'm not saying it necessarily is, but that's the other argument. So it seems to me, do you really think this document is as clearly worded in your favor by using payments term? It's just as strong as if payment terms had rather said other provision. You think your case is just as strong either way? Yes, Your Honor. Okay. Because there's nothing else that paragraph 19 has the potential to affect. Because all it discusses is payment. We're arguing about whether or not it affects expenses or not. We're arguing about that right now. If it said any other provision, it would clearly knock out that no expense provision in paragraph 4, wouldn't it? Other provision? Yes. It would clearly do it. Yes, Your Honor. There would be no question about that, would it? No. And again, I respectfully submit there still isn't. I don't understand and can't fathom why the word with a capital E expenses would be included as part of paragraph 19 if it wasn't the drafter's intent that upon the occurrence of default they'd be treated differently. I think you may make a plausible argument. The question is is it the only argument that can be made? That's the question. I would submit to you that it is, Your Honor, because any payment terms to the contrary means all payment terms to the contrary. So to the extent there is a conflict that arises, this paragraph says we have preeminence in the event of default and there is no other way to do it. And it gives you first, second, third how it is to be accomplished. So I don't think that there is a difference between the distinction of payment terms and contract provisions in this case because expenses and their application is a part of the payment terms in the full scheme of the document. I believe that the entire thing works harmoniously and that if you give full effect to all the terms and provisions contained within it, that there is no conflict. If, Your Honor, see fit to reverse the trial court's denial of the motion for judgment on the pleadings, we'd also ask that you reverse the award of its costs and attorney's fees to First South Bank and remand that issue for determination by the trial court in favor of Bank of the Ozarks. Thank you. Thank you very much. We'll come down.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker